# CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
|---|---|---|---|
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Christopher Skinnell | Michael Robinson |

**Proceedings:**     DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (Dkt. 38, filed October 15, 2018)

## I. INTRODUCTION

On June 10, 2016, plaintiff Brownstone, LLC filed this action against defendants Big Sandy Rancheria of Western Mono Indians (the "Tribe") and the Big Sandy Rancheria Entertainment Authority (the "Authority") (collectively, the "Tribal Parties"). Dkt. 1 ("Compl."). After multiple stipulations to extend the time by which defendants could file an answer, defendants filed a motion to dismiss on September 14, 2018. Dkt. 29. Before this Court ruled on the matter, plaintiff filed a first amended complaint on October 1, 2018. Dkt. 35 ("FAC"). Plaintiff alleges the following claims: (1) claims for the breaches of two contract; (2) money had and received; (3) conversion; (4) Open Book Account; and (5) declaratory relief.

Defendants moved to dismiss the FAC on October 15, 2018. Dkt. 38 ("MTD"). Plaintiffs filed an opposition brief on November 5, 2018, dkt. 41 ("Opp'n"), and defendants filed a reply on November 16, 2018, dkt. 47 ("Reply").

The Court held a hearing on December 17, 2018. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

## II. BACKGROUND

Plaintiff alleges as follows.

Plaintiff Brownstone, LLC, is a Nevada limited liability corporation, as well as a subsidiary of American Vantage Companies, Inc. ("American Vantage"), which is a Nevada corporation. FAC ¶ 6. American Vantage has worked in the gaming, hospitality and management industry for thirty years. Id. Defendant Big Sandy Rancheria of Western Mono Indians (the "Tribe") is a federally-recognized Indian tribe, and defendant Big Sandy Rancheria Entertainment Authority ("Authority") is a wholly-owned instrumentality of the Tribe (jointly, the "Tribal Parties"). Id. ¶¶ 7 – 8.

After a five-month selection process, plaintiff alleges that it was selected by the Tribe to provide expertise in developing a large, Class III gaming facility.[1] Id. ¶ 12. The development was to result in a 413,000 square foot destination resort in Fresno, CA, which would include a 300-room hotel, a 185,000 square-foot casino, and more (the "Project"). Id. ¶ 11. Although the Tribe had experience operating a smaller gaming operation, it sought a partnership with plaintiff because plaintiff could provide expertise in larger casino developments. Id. ¶ 2.

---

[1] Under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq. ("IGRA"), Indian Gaming facilities can be one of three classes. 25 U.S.C. § 2710 (a)-(d) (West). Class III gaming "includes the types of high-stakes games usually associated with Nevada-style gambling [and] is subject to a greater degree of federal-state regulation than either class I or class II gaming." In re Indian Gaming Related Cases, 331 F.3d 1094, 1097 (9th Cir. 2003). Specifically, under the IGRA, Class III gaming must be "(1) authorized by an ordinance or resolution adopted by the governing body of the Indian tribe and the Chairman of the National Indian Gaming Commission; (2) located in a State that permits such gaming for any purpose by any person, organization, or entity; and (3) conducted in conformance with a Tribal–State compact entered into by the Indian tribe and the State and approved by the Secretary of the Interior." Id. (citing 25 U.S.C. § 2710(d)(1), (3)(B)). Courts have thus found the Tribal-State compacts to be "a creation of federal law" and "IGRA prescribes the permissible scope of the Compacts." Cabazon Band of Mission Indians v. Wilson, 124 F.3d 1050, 1056 (9th Cir. 1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
|---|---|---|---|
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

### A. The Underlying Agreements

The parties entered into contracts aligned with different phases of the Project. Id. ¶ 3. Following the initial Memorandum of Understanding ("MOU"), executed on January 16, 2007, the parties first entered into a Credit Agreement on or about March 25, 2007. Id. ¶¶ 3, 13. Under the Credit Agreement, plaintiff was to advance initial funds amounting to $500,000 to the Tribe for non-gaming purposes. Id. ¶ 3. The Tribe was required to repay these funds once further financing was obtained, namely when (1) the Tribe entered into a bridge financing agreement, or (2) when the Tribe entered into an agreement with someone other than plaintiff to provide for development of the Project. Id. ¶¶ 3, 17. As contemplated by the Credit Agreement, plaintiff alleges that it advanced the full $500,000 to the Tribe between January and May of 2007. Id. ¶ 15. After the Tribe requested several additional advances, plaintiff alleges that it advanced an additional $555,000 to the Tribe between May and September 2007. Id. ¶ 16. Accordingly, plaintiff claims that it advanced a total of $1,055,000 to the Tribe under the Credit Agreement. Id.

The parties also entered into the Development Agreement on or about the same date as the Credit Agreement. Id. ¶ 3. Under the Development Agreement, plaintiff was to help the Tribe obtain either bridge financing or permanent financing for the Project. Id. ¶¶ 3, 19. Plaintiff was also to provide additional services to help develop and construct the Project, including (1) advice with regards to federal and state regulatory matters governing gaming (2) assistance with negotiating contracts with architects, contractors, and other professions; (3) preparation of budgets and other business plans; (4) status updates to the Tribal representatives; and (5) assistance with the acquisition of insurance for the Project. Id. Per the Development Agreement, plaintiff was to be paid at various stages of the development process; it was also to be reimbursed for its costs and receive a completion bonus at the end of the Project. Id. ¶ 3. Specifically, plaintiff claims that, in return for its services under the Development Agreement, it was to receive: (1) a financing structuring fee equal to 2.5% of the gross amount received by the Tribe, including what plaintiff initially advanced; (2) a development fee equal to 6% of the Project costs for developing, constructing, and opening the Project; and (3) a $2,500,000 bonus if the Project opened within 24 months of the close of permanent financing. Id. ¶ 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. |

### B. Seeking Financing for the Project and Project Set Backs

Plaintiff worked with an investment partner to find potential financial investors for the Project and in October 2007, Guggenheim Partners, LLC ("Guggenheim") committed $39,935,000 of bridge financing to the Tribe. Id. ¶¶ 21–24. At the time of closing, Guggenheim directly released $3,028,000 to the Tribe, and plaintiff received $750,000 of these funds as partial reimbursement for the funds advanced under the Credit Agreement. Id. ¶ 25. Plaintiff also received $200,000 for services rendered to date. Id.

Following the receipt of these initial funds, however, multiple set backs slowed the development of the Project. The Tribe's counsel failed to amend the Compact, as necessary to develop the Project, with the California Governor's office. Id. ¶¶ 29, 33. The necessary environmental impact study was not completed within the expected timeline, due to concerns about endangered species. Id. ¶¶ 30, 33. Water resource issues also arose. Id. ¶¶ 31–32. As a consequence, at the end of 2008, when the Tribal Parties failed to meet multiple milestones contemplated by the agreement between the Tribal Parties and Guggenheim, Guggenheim indicated that it would no longer provide bridge financing for the Project's predevelopment. Id. ¶ 33. Plaintiff alleges that it was not subject to the schedule in the Guggenheim contract, however, and that repayment pursuant to the Credit Agreement was not conditioned on the fulfillment of the Guggenheim milestones. Id. ¶ 28.

Despite these setbacks, throughout 2007 and 2008, plaintiff claims that the plaintiff and the Tribal Parties continued to negotiate a third agreement, the Consulting Agreement, whereby plaintiff would provide services for the operations of the casino once completed. Id. ¶ 34. However, after the Tribe elected new leadership in September 2008, the Tribal Parties ultimately declined to execute the Agreement. Id. ¶ 35. Still, plaintiff claims that it continued to seek financing sources to assist the Tribe with pursuing the Project, if without the complete cooperation of the Tribal Parties. Id. ¶ 36.

### C. The Tribal Parties' Assertion that the Agreements were Void due to Lack of Licensing

Under the 1999 Tribal-State Compact entered into by the Tribe and the State of California (the "Tribal-State Compact"), which enables the Tribe to operate Class III gaming facilities, certain individuals and entities that provide services to a Class III

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
|---|---|---|---|
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

gaming operation must be licensed. Id. ¶ 4. Once completed, the Project would include Class III gaming operations. Id. ¶ 11. However, plaintiff alleges that the parties agreed that licensing was unnecessary for the Credit Agreement and the Development Agreement because those agreements only contracted plaintiff to perform certain services before any gaming operations occurred. Id. ¶ 4. The agreements themselves both provide that,

> Except to the extent Sections 6.4.5 or 6.4.6 of the Compact may be deemed by a Person other than the Tribal Parties or any Related Party of the Tribe (including any Gaming Regulatory Authority) to require Lender to be licensed, it is not necessary under the Tribal Law that Lender be licensed, qualified or entitled to carry on business in any jurisdiction by reason of the execution, delivery, performance or enforcement of any of this Agreement, the Note or the other Loan Dcouments. Neither the Tribe nor the Borrower have adopted any law, rule, regulation, ordinance or resolution which requires Lender to be licensed, including any law, rule, regulation, ordinance or resolution pursuant to Sections 6.4.5 or 6.4.6 of the Compact or otherwise.

FAC, Ex. 2 at 5 ("Credit Agr."); accord FAC, Ex. 3 at 11 ("Dev. Agr."). Plaintiffs further claim that the Tribe expressly warranted this provision, and that that the agreements did not require the approval of "any Gaming Regulatory Authority." Id. ¶¶ 4, 48. Conversely, had the parties executed the Consulting Agreement, plaintiff alleges that the parties had agreed that plaintiff would have been required to obtain the applicable gaming licenses, because the consulting services would have pertained to actual gaming activities. Id. ¶ 34.

Despite these provisions in the Credit and Development Agreements, plaintiff alleges that on December 9, 2010, the Big Sandy Rancheria Gaming Commission ("Gaming Commission"), an instrumentality of the Tribal Parties, sent plaintiff a letter demanding that plaintiff apply for a gaming license within ten days. Id. ¶ 37. Plaintiff responded that the parties had already agreed that a license was unnecessary, as noted in the agreements. Id. ¶ 38. Then, on or about February 9, 2010, the Gaming Commission sent a subsequent letter, which stated that it deemed plaintiff's failure to apply for a license as "noncompliance" with the Tribal-State Compact. Id. ¶ 39. The letter therefore concluded that, "based upon the above determination of non-compliance, [plaintiff] is to refrain from contact with [the Tribal Parties] in regard to discussions concerning the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
|---|---|---|---|
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

above-mentioned Development and Credit Agreement." Id. ¶ 39. The Tribe's Chairperson Elizabeth Kipp also wrote to plaintiff on February 11, 2010, stating that the Tribal Parties would not discuss the Credit and Development Agreements with plaintiff until the Gaming Commission notified the Tribal Parties that "the regulatory issues are resolved." Id. ¶ 40.

On March 9, 2010, the Gaming Commission also solicited the opinion of the National Indian Gaming Commission ("NIGC") as to whether the Credit and Development Agreements were "management contracts." Id. ¶ 42. This determination was critical because the NIGC must approve any management contracts; otherwise they are void. Id. On July 2, 2010, the NIGC's General Counsel Penny Coleman issued a letter to the Tribe, concluding that none of the agreements constituted management contracts under the IGRA. Id. ¶ 44. However, Coleman stated that Credit and Development Agreements required plaintiff to be licensed, pursuant to the Tribal-State Compact. Id. ¶ 45. Eleven days later, on July 13, 2010, the Gaming Commission contacted the Tribe, stating its findings that the Credit and Development Agreements were "null and void" because plaintiff never received gaming licenses. Id. ¶ 47. The Tribal Parties communicated these findings to plaintiff on July 16, 2010, and stating that, "[a]s a result, all parties are relieved of any duties or obligations arising from each of these agreements." Id. ¶ 48.

Plaintiff claims that the Tribal Parties' asserted grounds for voiding the contracts are pretextual. Id. ¶¶ 41–43. Plaintiff claims that "the Tribe's Gaming Commission demanded that [plaintiff] apply for a license—nearly three years after the Tribe signed the MOU and contrary to the express terms of the parties' agreements—with the intent and purpose to attempt to justify the Tribal Parties' repudiation of those agreements and their defaults on their obligations under them." Id. ¶ 41. Plaintiff further alleges that the Gaming Commission solicited the opinion of the NIGC "as a further pretextual basis to justify the Tribe's repudiation of" the Credit and Development Agreements. Id. ¶ 43. Plaintiff claims that Coleman's opinions "were not within the jurisdiction and authority of the NIGC" because neither the IGRA nor the NIGC regulations interpret tribal-state compacts, nor do they require gaming licenses. Id. ¶ 46. On or about January 31, 2011, plaintiff claims that the Tribe announced that it had executed an agreement with a new development partner. Id. ¶ 49. To date, however, the Tribe has not identified the new partner. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
|---|---|---|---|
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

### D.    The 2011 Action and the Instant Action

On February 3, 2011, the Tribal Parties filed an action for declaratory relief in the Eastern District of California. Id. ¶ 51. That case was transferred to this Court, pursuant to a forum selection clause. Id. In response, plaintiff filed a counterclaim. Id. ¶ 52. In order to facilitate a potential settlement, the parties entered into a stipulation to dismiss that action without prejudice on June 11, 2012. Id. ¶ 53. That stipulation extended the applicable statute of limitations and "any other time limitation or deadline applicable to any claims that the parties have related to their rights or obligations" for four years. Id.

The parties did not reach a settlement, and on June 10, 2016, plaintiff filed this action. After the Tribal Parties moved to dismiss plaintiff's complaint, plaintiff filed this first amended complaint on October 1, 2018. Defendants now move to dismiss plaintiff's claims on the grounds that (1) the Court lacks subject matter jurisdiction over this matter; (2) that venue is improper; and (3) that plaintiff fails to state a claim for which relief is available. Plaintiff opposes all grounds.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, pp. 211, 231 (3d ed. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

"Jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears the court lacks jurisdiction." Unite Here Int'l Union v. Pala Band of Mission Indians, 583 F. Supp. 2d 1190, 1194 (S.D. Cal. 2008).

### B. Rule 12(b)(3)

Under Fed. R. Civ. P. 12(b)(3), a defendant may move to dismiss or transfer a complaint for improper venue. When deciding a Rule 12(b)(3) motion, unlike a Rule 12(b)(6) motion, the Court need not accept the pleadings as true and may consider facts outside the pleadings. See R.A. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). Once a defendant raises an objection to venue, the plaintiff bears the burden of establishing that the selected venue is proper. Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). To prevail on the 12(b)(3) motion, the plaintiff only needs to make a prima facie showing of proper venue.

### C. Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

Plaintiff argues that the Court has subject matter jurisdiction in this case under 28 U.S.C. § 1331, commonly referred to as "federal question jurisdiction." Plaintiff contends that this case requires resolution of a substantial question of federal law under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq. ("IGRA"), as well as the Tribal-State Compact between Big Sandy Rancheria and the State of California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

FAC ¶ 1; Opp'n at 13. Specifically, plaintiff alleges that its case requires resolution of whether the Tribal-State Compact required plaintiff to be licensed in order to enter into the Credit and Development Agreements. Plaintiff also alleges that the Tribal Parties expressly waived their sovereign immunity for the purposes of this lawsuit, first in the Credit and Development Agreements, and then in the 2011 stipulation. FAC ¶ 9; opp'n 19 - 22.

Defendants respond that federal question jurisdiction does not provide this Court subject matter jurisdiction because a federal issue is not apparent on the face of plaintiff's complaint, nor is a question of federal law "a necessary element of one of one of [plaintiff's] well-pleaded state claims." Mot. at 15 (citing Rains v. Criterion Sys., Inc., 80 F.3d 339, 345 (9th Cir. 2996) (citations omitted). Defendants further argue that federal courts only have jurisdiction over disputes between signatories of tribal-state compacts, not over any contract dispute tangentially related to a compact, even where a tribe is involved. Reply at 4. Defendants also contend that their waiver of sovereign immunity has expired. Mot. at 21.

Section 1331 provides that, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331 (West). Here, the Court finds that it lacks subject matter jurisdiction over this case. "The fact that the defendant is a Native sovereign is not, by itself, sufficient to raise a federal question." Peabody Coal Co. v. Navajo Nation, 373 F.3d 945, 949 (9th Cir. 2004). Additionally, plaintiff's claims do not present a federal issue on the face of its complaint, and while federal common law governs certain cases involving tribal rights and disputes rights, this case is not governed by federal govern law.

### 1. Well-Plead Complaint Rule

The Court finds that federal question jurisdiction does not confer jurisdiction over this matter because plaintiff's case does not satisfy the well-plead complaint rule. The Supreme Court has made clear that federal question jurisdiction is proper "only [for] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California, 463 U.S. 1, 27–28 (1983). Accordingly, "[i]t is not enough that the plaintiff alleges some anticipated defense to his cause of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

action, and asserts that the defense is invalidated by some provision of the Constitution of the United States" or other federal law. Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908); see also 13D Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 3566 (3d ed. 2018) ("The well-pleaded complaint rule stands for the proposition that the court, in determining whether the case arises under federal law, will look only to the claim itself and ignore any extraneous material.").

Mottley exemplifies the implications of the well-plead complaint rule. 211 U.S. 149. In that case, a couple filed suit against a railroad company when the company declined to renew the couple's lifetime rail passes, which they previously received in a settlement agreement. Id. at 150. The plaintiffs anticipated that the company would rely on a recently-passed federal statute, which prohibited the issuing of free passes for transportation, as their defense. Id. at 150 – 151. However, while the Mottley plaintiffs signaled that the rail company would rely on a federal statute, and although the plaintiffs asserted that the federal statute was invalidated by the Constitution, which presented a disputed federal issue, the Supreme Court held that this did not confer federal question jurisdiction. Id. at 152. The Court explained that "[a]lthough such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution" or other federal law. Id.

In this case, as in Mottley, while plaintiff asserts that its "right to relief hinges entirely upon a disputed interpretation of the Compact," which is governed by federal law, opp'n at 14, this federal issue only arises if defendants assert the Tribal-State Compact's licensing provisions as their defense. The gravamen of plaintiff's case is for breach of contract and related state common law claims. FAC ¶¶ 55–82. The elements of a breach of contract claim under California law are (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendants' breach; and (4) the resulting damages to the plaintiff. Opp'n at 18 (citing Oviation Toys Co. v. Only Hearts Club, 675 Fed. Appx. 721, 723 (9th Cir. 2017)). Plaintiff argues that "the proper interpretation of the Compact, as incorporated by the Credit and Development Agreements, is relevant to the second element of these causes of action," which determines whether plaintiff substantially performed under the contract or was excused. Opp'n at 19. However, while the relevant agreements do reference the Tribal-State Compact, the terms of the agreements establish a default that plaintiff need not be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL 'O'

| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
|---|---|---|---|
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

licensed. Accordingly, to show that plaintiff performed, plaintiff certainly need not claim that it was not licensed. Instead, as defendants argue, "the issue of licensing"—the federal question that plaintiff contends supports subject matter jurisdiction—"arises only if the Tribal Parties raise it as a defense." Reply at 10. Indeed, plaintiff effectively concedes as much when it states that, "[t]he position of the BSR is that the Compact, and therefore the Development and Credit Agreement, require Brownstone to be licensed." Opp'n at 14. Much like the plaintiffs in Mottley, then, plaintiff cannot anticipate a disputed federal question in its opponents' defense to confer subject matter jurisdiction. See also Jackson v. United States, 485 F. Supp. 1243, 1247 (D. Alaska 1980) (finding that plaintiff's breach of contract claim did not confer federal question jurisdiction because while plaintiffs "anticipate that the defendants may raise the issue of the Secretary's disapproval of the contracts as a defense to the common law contract claim[, i]t is now settled law that anticipated defenses which themselves stem from federal law, do not provide a sufficient basis to the plaintiff for initial federal jurisdiction").

Plaintiff emphasizes that, "[t]he proper resolution of [its] claims is impossible without resolution of a disputed interpretation of the Tribal-State Compact between the BSR and the State of California." Opp'n at 13. This may be true, but it does not alter the Court's analysis. As Wright and Miller highlight, "It is worth noting that the effect of the [well-plead complaint] rule, often, is to funnel to state courts cases in which the only issues to be litigated are issues of federal law." 13D Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 3566 (3d ed. 2018).

### 2. Request for Declaratory Relief

Plaintiff's request for declaratory relief also does not provide a basis for federal question subject matter jurisdiction under 28 U.S.C. § 1331. Plaintiff requests this Court to make a "determination of its rights and duties under the Credit Agreement, . . . and that [plaintiff] was not required by the Compact to be licensed." FAC ¶ 77. Plaintiff argues that this request for declaratory relief provides jurisdiction because, when determining whether there is a federal question involved in declaratory judgments, "courts view the complaint from the perspective of the declaratory defendant, rather than the declaratory plaintiff. . . . In other words, the Court is to examine whether the BSR could have filed a suit against Brownstone based on its purported failure to conform to the Compact and IGRA." Opp'n at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

However, the Court finds that plaintiff improperly seeks to expand the reach of federal jurisdiction for declaratory relief cases. In permitting federal declaratory relief, Congress intended to expand a plaintiff's range of remedies, not to expand jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (finding, in a declaratory relief case, that the court lacked federal question jurisdiction to interpret a provision of the federal Natural Gas Act because "whatever federal claim [plaintiff] may be able to urge would . . . be injected into the case only in anticipation of a defense to be asserted by petitioners"). Accordingly, "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." Franchise Tax Bd. of State of Cal., 463 U.S. at 16 (citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2767 (2d ed. 1983)). Here, the question of whether plaintiff was required to be licensed under the Tribal-State Compact stems from an anticipated federal defense. Therefore, plaintiff's request for declaratory relief does not confer subject matter jurisdiction under 28 U.S.C. § 1331.

### 3. Federal Common Law

The fact that "[g]eneral principles of federal contract law govern the [tribal-state] Compact[], which [was] entered pursuant to the IGRA," also does not confer subject matter jurisdiction on this Court under 28 U.S.C. § 1331. Opp'n at 13 – 14 (quoting Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California, 618 F.3d 1066, 1073 (9th Cir. 2010)). Federal common law governs certain actions regarding Native American Tribes, but as explained in Cohen's Handbook on Federal Indian Law, "[a]s in federal question claims based on federal statutes, constitutional provisions, and treaties, it is not enough in those cases that the plaintiff's claim involves the interpretation of federal common law; federal common law must actually provide the basis for the cause of action asserted." 1-7 F. Cohen, Handbook of Federal Indian Law § 7.04 (2017). Therefore, while "[a] claim to enforce the Compacts arises under federal law and thus warrants federal question jurisdiction pursuant to 28 U.S.C. § 1331, . . . [the] IGRA does not serve as a basis for federal jurisdiction for ancillary issues involving Indian gaming, such as routine gaming-related contracts and consulting agreements." Harris v. San Manuel Band of Mission Indians, No. 14-CV-02365 SJO (DTBx), 2015 WL 12791503, at *2 (C.D. Cal. Apr. 29, 2015) (internal citations omitted); see also Unite Here Int'l Union v. Pala Band of Mission Indians, 583 F. Supp. 2d 1190, 1197 (S.D. Cal. 2008)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

(finding that the Court lacked subject matter jurisdiction to enforce an arbitration award, even where the Tribal-State Compact defined the labor regulations in dispute, in part because, "[a]s a threshold issue, [plaintiff] is not bringing a cause of action created by the IGRA or other federal law").

This case involves "routine gaming-related contracts and consulting agreements" which do not confer federal question jurisdiction. Harris, 2015 WL 12791503, at *2. Federal common law does not provide the cause of action for plaintiff's breach of contract claim, and the law is clear that the possibility of a federal defense invoking federal common law does not confer subject matter jurisdiction. The cases that plaintiff cites, in support of its argument that this case arises under federal common law, do not convince the Court otherwise. Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California, 813 F.3d 1155 (9th Cir. 2015), Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California, 618 F.3d 1066 (9th Cir. 2010), and Citizen Potawatomi Nation v. Oklahoma, 881 F.3d 1226 (10th Cir.), involved the signatories of tribal compacts—the tribes and the states—who sought to enforce and/or interpret provisions of the compacts they entered. Therefore, federal question jurisdiction was proper. See Unite Here Int'l Union, 583 F. Supp. 2d at 1195 (citing Cabazon Band of Mission Indians, 124 F.3d at 1050, 1056) ("Federal question jurisdiction exists for signatories to enforce Gaming Compacts under the IGRA."). Here, in contrast, plaintiff seeks to enforce the Credit and Development Agreements, which it entered into with the Tribal Parties. To the extent that interpretation of the Tribal-State Compact is necessary, it will be ancillary to plaintiff's claims.[2]

---

[2] Although it is not expressly applicable to this case because the parties have not represented that the Credit and Development Agreements required federal approval, the Ninth Circuit has stated that even where a contract is federally-authorized or approved, that does not necessarily provide federal question jurisdiction. See Peabody Coal Co., 373 F.3d at 949 (citing Littell v. Nakai, 344 F.2d 486 (9th Cir.1965) (finding federal subject matter jurisdiction lacking in a breach of contract case between a tribal party and a non-tribal party, even where the contract had received federal approval)). Courts must look to the specifics of a claim to determine whether it presents an appropriate federal question. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

Muhammad v. Comanche Nation Casio, 742 F. Supp. 2d 1268 (W.D. Okla. 2010), is also not persuasive. The Muhammad court found that federal question jurisdiction was properly asserted in that case because it found a necessary and preliminary procedural federal question: whether the Oklahoma state courts had jurisdiction over tort actions arising on tribal lands against a tribal nation. Id. at 1275. Importantly, however, the Muhammad recognized that it was "a rare state common law claim that will so uniquely turn on a critical matter of federal law" that warrants federal question jurisdiction, id. at 1277. The court expressly added that, "[t]he mere fact that the petition references the Compact—a tribal gaming compact made effective by IGRA—does not mean that a federal question is presented." Id. at 1275. In this case, the parties present no similar question about the state court's adjudicatory authority. Indeed, plaintiff's parent company has previously litigated contract disputes with tribal parties in state court. See, e.g., Am. Vantage Companies v. Table Mountain Rancheria, No. F045223, 2005 WL 2048858, at *1 (Cal. Ct. App. Aug. 26, 2005). Accordingly, the Court finds this case to be more similar to Harris, 2015 WL 12791503, than to Muhammad. In Harris, an employment case, the tribal-state compact established federal labor standards with which the tribe agreed to comply, but the court still found that the need to apply those standards did not confer federal question jurisdiction. Id. at *2.

In sum, plaintiff's claims do not arise under federal law, as provided by 28 U.S.C.A. § 1331, and accordingly, the Court lacks jurisdiction over the matter.[3] Although plaintiff argues that the parties effectively conceded subject matter jurisdiction given defendants' 2011 filing and the 2011 stipulation, opp'n at 16–17, "[t]he parties cannot . . . create federal court subject matter jurisdiction by stipulation." Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 n.1 (9th Cir. 1993) (citing Neirbo Company v. Bethlehem Shipbuilding Corp., 308 U.S. 165 (1939)). Furthermore, "the court is under a continuing duty to dismiss an action whenever it appears the court lacks jurisdiction." Unite Here Int'l Union, 583 F. Supp. 2d at 1194. The Court accordingly **DISMISSES**

---

[3] Although the parties do not raise the issue, diversity jurisdiction is also unavailable. See Cook v. AVI Casino Enters., 548 F.3d 718, 722 (9th Cir. 2008) (citing American Vantage Cos. v. Table Mountain Rancheria, 292 F.3d 1091, 1098 (9th Cir. 2002) (explaining that for the purposes of diversity, "[a]n Indian tribe or an unincorporated arm of a tribe is not a citizen of any state")).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:16-cv-04170-CAS(AGRx) | Date | December 17, 2018 |
|---|---|---|---|
| Title | BROWNSTONE, LLC. v. BIG SANDY RANCHERIA OF WESTERN MONO INDIANS ET AL. | | |

plaintiff's claims, *with leave to amend*. As the Court lacks subject matter jurisdiction over this case, it does not reach defendants' other grounds for dismissal.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion to dismiss, pursuant to Rule 12(b)(1). Plaintiff shall file its amended complaint within **thirty (30) days** of the date of this order.

IT IS SO ORDERED.

|  | 00 | 07 |
|---|---|---|
| Initials of Preparer | CMJ | |